**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **DALE P. FIELD, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:20-00147** |
| | ) | |
| **STATE OF WEST VIRGINIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Plaintiff's Motion to Remand Case to Circuit Court of Kanawha County (Document No. 8), filed on March 18, 2020; and (2) Defendants' Motion to Dismiss Amended Complaint (Document No. 19), filed on April 27, 2020. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 5.) Plaintiff filed his Response in Opposition on May 19, 2020. (Document No. 22.) On May 26, 2020, Defendants filed their Reply. (Document No. 24.) (Id.) Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff's Motion to Remand (Document No. 8) should be denied, and Defendants' Motion to Dismiss (Document No. 19) should be granted.

**PROCEDURAL BACKGROUND**

On August 19, 2019, Plaintiff filed in the Circuit Court of Kanawha County a Complaint alleging a violation of his constitutional rights. (Document No. 1-1, pp. 1 – 9.) As Exhibits, Plaintiff attached a copy of his grievances. (Id., pp. 10 – 17.) On September 23, 2019, Plaintiff

filed his "Notice of Administrative Remedy Exhausted." (Id., pp. 19 – 21.) On September 27, 2019, Plaintiff filed his Affidavit. (Id., pp. 21 – 22) On January 21, 2020, Plaintiff provided his updated address. (Id., p. 30.) On January 24, 2020, the Kanawha County Circuit Court issued Summonses on behalf of Plaintiff. (Id., pp. 31 – 34.) On February 20, 2020, the above action was removed to this Court. (Document Nos. 1 and 1-2.) Specifically, Defendants filed their Petition/Notice of Removal and paid the required filing fee (Document Nos. 1, 1-2, 1-3.) On January 26, 2020, Defendants filed a Motion to Dismiss Complaint and Memorandum in Support. (Document Nos. 3 and 4.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 26, 2020, advising him of the right to file a response to Defendants' Motion to Dismiss. (Document No. 5.)

On March 18, 2020, Plaintiff filed the following: (1) A "Motion to Remand Case to Circuit Court of Kanawha County" (Document No. 8); (2) A "Motion for Leave to File Amended Complaint" (Document No. 9); (3) A "Motion to Appoint Guardian ad Litem" (Document No. 10); and (4) A Motion to Extend Time to File Response to Defendants' Motion to Dismiss (Document No. 11). By Order entered on March 19, 2020, the undersigned granted Plaintiff's Motion to Amend[1] and Motion for Extension of Time and denied Plaintiff's Motion to Appoint Guardian ad Litem. (Document No. 12.) On March 25, 2020, Defendants filed a Response to Plaintiff's Motion to Remand. (Document No. 13.) On March 26, 2020, Plaintiff filed his Response in Opposition to Defendants' Motion to Dismiss. (Document No. 14.) Plaintiff filed a Motion for Appointment of Counsel on March 26, 2020, and the undersigned denied the Motion on March 30,

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2020. (Document Nos. 15 and 16.) On April 3, 2020, Defendants filed their Reply to Plaintiff's Response in Opposition. (Document No. 17.)

On April 15, 2020, Plaintiff filed his Amended Complaint. (Document No. 18.) As Defendants, Plaintiff names the following: (1) State of West Virginia; (2) Betsy Jividen, Commissioner of Division of Rehabilitation and Corrections; (3) Kelly Lantum, Superintendent of Tygart Valley Regional Jail; and (4) Captain Patrice, Captain of Tygart Valley Regional Jail.[2] (Id., p. 1.) Plaintiff alleges he was transported to the Tygart Valley Regional Jail on or about February 9, 2019. (Id., p. 2.) Plaintiff explains that he was "housed in section A8, which was considered a general population section of inmates who had like charges or otherwise needed to be in protective custody, but desired an open general population section." (Id.) Plaintiff states that on or about March 18, 2019, a group of inmates housed in Section A8 were involved in a physical altercation and Section A8 was on "lockdown" for 72 hours in order to allow an investigation and removal of involved inmates. (Id.) Plaintiff alleges that on or about "March 15, 2019,[3] the section was opened up after the involved offenders were removed from the section." (Id.) Plaintiff states that the offenders involved in the incident were returned to Section A8 on March 22, 2019, and Section A8 was again placed on "lockdown." (Id.) Plaintiff complains that "[t]he A8 inmates, Plaintiff included, were told that the indefinite lockdown period was a direct result of the fight, and that the inmates would be on lockdown because we 'didn't know how to act and get along.'" (Id.) Plaintiff claims there were 29 inmates housed in Section A8, and only five or six were involved in the

_____

[2] Defendants state that Plaintiff incorrectly identified Superintendent Bryan Kelly Lanham as "Kelley Lantum," and Captain Robert Petrice as "Captain Patrice."

[3] This date appears incorrect.

altercation that resulted in the "lockdown." (Id.) Plaintiff complains that "[o]ther general population sections are given open use of TV, telephone, gym, outside recreation during daylight hours, use of dayroom, open use of showers, and social interaction." (Id.) Plaintiff complains that the foregoing was denied to Plaintiff "[d]uring the mass punishment lockdown." (Id., p. 3.) Plaintiff states that during the "lockdown," inmates in Section A8 were released once a day, one at a time, for approximately an hour to shower and make one phone call. (Id.) Plaintiff acknowledges that on April 29, 2019, "A8 was released from lockdown and turned back into general population." (Id.) Plaintiff alleges that "[t]his treatment was a clear mass punishment incident that differentiated all the A8 inmates from other sections in the jail as no other section is treated to these conditions for the same reasoning." (Id.) Plaintiff complains that the threat of lockdown continued for Section A8 for "every incident that occurred, while other sections remained without threat when incidents occurred." (Id.) Plaintiff acknowledges that inmates in Section A8 were "offered the opportunity to remove themselves from the section while it was a lockdown section, the only option made available to Plaintiff and others were sections that would put them directly in harm's way due to the nature of the charges against them." (Id.) Plaintiff further claims that the "[a]dministrative grievance procedure has not been followed and ignored by both the institution and the Commissioner's office."[4] (Id.) Based upon the forgoing, Plaintiff claims as follows: (1) Defendants Lantum and Patrice improperly subjected Plaintiff to "mass punishment;" (2) Defendants have denied Plaintiff the right to due process by subjecting him to

---

[4] Inmates have no constitutional right to participate in the administrative grievance proceedings. *See Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); *Nolan v. Clarke*, 2019 WL 4923953, * 6 (W.D.Va. Oct. 4, 2019); *Prince v. Crawford*, 2017 WL 2991350, * 13 (S.D.W.Va. May 31, 2017), *report and recommendation adopted by*, 2017 WL 2991344 (S.D.W.Va. July 13, 2017).

4

"lockdown" when no charges were made against Plaintiff; (3) Defendants failed to provide equal protection to Plaintiff when Plaintiff was subjected to a "mass lockdown" for an incident he was not involved in, and other housing sections are not subjected to a mass lockdown due to similar circumstances; (4) The "lockdown" constituted cruel and unusual punishment because Plaintiff was "punished" for an incident he was not part of and "subject to sub-par conditions being housed in a cell that was designed for one individual with dayroom access, and was reduced to two individuals without dayroom access and loss of additional privileges that are imbedded in human nature;" (5) Defendants acted with deliberate indifference to the "wellbeing of the inmates when Plaintiff and others were confined to cell under segregation type conditions in respond to an incident that Plaintiff was not involved in;" (6) Defendants engaged in "improper supervision" by allowing Plaintiff to be placed in "twenty-three hour cell isolation," which treated Plaintiff "in a harsh manner without provocation, case or just reason;" and (7) Defendants exposed Plaintiff to emotional distress by confining Plaintiff "to a cell for twenty-three hours a day" with "sub-par conditions" for incidents that occurred not involving Plaintiff." (Id., pp. 3 – 6.) As relief, Plaintiff request monetary and injunctive relief. (Id., p. 6.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his "Inmate Request/Grievance dated April 8, 2019" (Document No. 18-1, pp. 1 – 4.); (2) A copy of his undated appeal of the grievance to the Office of the Commissioner (Id., p. 5.); and (3) A copy of Plaintiff's letter to the Office of the Commissioner dated April 8, 2019 (Id., p. 6.).

On April 27, 2020, Defendants filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 19 and 20.) In their Motion to Dismiss, Defendants argue that Plaintiff's Amended Complaint should be dismissed based on the following: (1) The State of West Virginia is not a 'person' under 42 U.S.C. § 1983 (Document No. 20, pp. 4 – 5.); (2) "Plaintiff's Amended

Complaint fails to state a claim against Defendant Betsy Jividen, upon which relief may be granted under 42 U.S.C. § 1983" (Id., pp. 5 – 9.); (3) Plaintiff fails to state a claim of supervisory liability against Defendants Lantum and Patrice (Id., pp. 9 – 11.); (4) Plaintiff fails to show an Eighth Amendment violation against Defendants (Id., pp. 11 – 13.); (5) Plaintiff fails to prove a due process violation by Defendants (Id., pp. 13 – 16.); and (6) Plaintiff's claims are barred by qualified immunity (Id., pp. 16 – 17.) By Order entered on April 28, 2020, United States District Judge Irene C. Berger denied Defendants' Motion to Dismiss Plaintiff's original Complaint as moot. (Document No. 21.) On May 19, 2020, Plaintiff filed he Response in Opposition. (Document No. 22.) Defendants filed a Reply on May 26, 2020. (Document No. 24.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements

6

of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4ᵗʰ Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4ᵗʰ Cir. 2015).

## ANALYSIS

1.    **Plaintiff's Motion to Remand:**

In his Motion, Plaintiff requests that the above case be remanded to the Circuit Court of Kanawha County. (Document No. 8.) In support, Plaintiff argues that "he filed his complaint in accordance with West Virginia § 25-1A-1 and subheadings thereof, which permits an inmate who

has exhausted the Administrative Procedures without success of remedy to file a complaint in the court of that state under the Prisoner Litigation Reform Act." (Id.) Plaintiff argues that "[t]he Defendants attempt to argue that the matter was brought under 42 U.S.C. 1983, which may be one avenue of proceeding proper for this situation, but is not the only remedy." (Id.) Plaintiff contends that "[t]he matter was brought under complaint to the state court as part of the procedural remedies laid out in WV § 25-1A-1." (Id.) Thus, Plaintiff argues that his case should be remanded to the Circuit Court of Kanawha County. (Id.)

In Response, Defendants argue Plaintiff failed to allege the basis for jurisdiction in his Complaint. (Document No. 13.) Next, Defendants note that Plaintiff now claims W. Va. Code § 25-1A-1 as the basis of jurisdiction, but this "statute does not speak to the nature of the claims that a plaintiff may seek in court." (Id.) Finally, Defendants argue that Plaintiff's Complaint clearly presents federal question jurisdiction under 42 U.S.C. § 1983 because Plaintiff argues he has been subjected to unconstitutional conditions of confinement. (Id.) Specifically, Defendants note that Plaintiff alleges that Defendants have violated his constitutional rights by subjecting him to cruel and unusual punishment, denying him due process and equal protection, and acting with deliberate indifference to inmates' wellbeing. (Id.)

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court . . .." Title 18 U.S.C. § 1331 provides that District Courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "[F]ederal Courts have jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

8

substantial question of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27 - 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Removal is not appropriate unless the plaintiff's "well-pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction. Id.; also see Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005)("removal is appropriate if the face of the complaint raises a federal question."); Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996)(instructing that courts are to "look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction.") Thus, removal is proper if federal law creates a plaintiff's claim. Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994). The Plaintiff, however, is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpiller , Inc., v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)." The removing party has the burden of establishing federal jurisdiction. Mulcahey, 29 F.3d at 151. Additionally, removal jurisdiction is strictly construed and all doubt is resolved in favor of remand. Id. at 148.

The District Court has supplemental jurisdiction over State law claims "that are so related to claims in the action within [the District Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[T]he federal claim must have sufficient substance to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative facts." United Mineworkers of America v. Gibbs, 383 U.S. 718, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)(Citation omitted.) The Court, however, may decline to exercise supplemental jurisdiction over a claim if one of the following factors exist:

(1) the claim raises a novel or complex issue of State law,

9

(2) the claim substantially predominates over the claim or claims which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). If one of the four factors is present, the determination of whether to decline the exercise of supplemental jurisdiction is discretionary and must be guided by "the values of judicial economy, convenience, fairness, and comity." City of Chicago v. International College of Surgeons, 522 U.S. 156, 173, 118 S.Ct. 523, 534, 139 L.Ed.2d 525 (1997); also see Price v. Brody Mining, LLC, 2010 WL 2486343 (June 15, 2010)(J. Goodwin)(remanding state law claims to state court following the dismissal of plaintiff's federal claims).

Based upon a review of Plaintiff's Complaint and Amended Complaint, the undersigned finds an adequate basis for federal question jurisdiction. In his Amended Complaint,[5] Plaintiff specifically alleges violations of federal law. Plaintiff alleges that during his confinement, Defendants violated his constitutional rights by (1) subjecting him to cruel and unusual punishment in violation of the Eighth Amendment, (2) violating his right to due process under the Fourteenth Amendment, and (3) violating his right to equal protection under the Fourteenth Amendment. Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. Although Plaintiff does not specifically cite Section 1983, Plaintiff is clearly alleging that

---

[5] Plaintiff was specifically notified that his Amended Complaint would supersede his original Complaint. (Document No. 12.)

state actors violated his constitutional rights. Additionally, Plaintiff fails to indicate any violations of West Virginia state law in his Complaint or Amended Complaint. In his Motion to Remand, Plaintiff merely cites West Virginia Code § 25-1A-1. (Document No. 8.) West Virginia Code § 25-1A-1 is the "Definitions" for the West Virginia Prisoner Litigation Reform Act. In W. Va. Code § 25-1A-1(a), a "Civil action" is defined as follows: "[A]ny action or appeal from an action filed by any current or former inmate or his or her personal representative with respect to conditions of confinement, including, but not limited to, petitions for extraordinary writs, civil actions under 42 U.S.C. § 1983 and other federal and state laws and negligence actions." Based upon the foregoing, the undersigned respectfully recommends that Plaintiff's Motion to Remand (Document No. 8) be denied.

**2.      Defendants' Motion to Dismiss:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

**A.      <u>Improper Parties</u>:**

In his Amended Complaint, Plaintiff states that he is suing the State of West Virginia and Defendants Jividen, Lantum, and Patrice in their individual and official capacities. (Document No.

11

18.) Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[6] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020)(an individual that is employed by an arm of the State and is sued in his or her official capacity is immune from suit under the Eleventh Amendment); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will, supra, 491 U.S. at 71, 109 S.Ct. at 2312. In Will, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." Id.; also see Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits

---

[6] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

suits for prospective injunctive relief against state officials acting in violation of federal law"). To the extent Plaintiff seeks monetary damages from the State and Defendants in their official capacity, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed. See Adams v. Ferguson, 884 F.3d 219 (4th Cir. 2018)("[T]he Eleventh Amendment does not bar an award of damages against an official in his personal capacity that can be executed only against the official's personal assets.") Additionally, the undersigned finds that the State of West Virginia and Defendants acting in their official capacity are not "persons" as required by Section 1983. Accordingly, the undersigned respectfully recommends that the District Court dismiss the State of West Virginia and Plaintiff's official capacity claims against Defendants to the extent Plaintiff seeks monetary relief.

**B.      Claim against Defendant Jividen:**

In Defendants' Motion, Defendant Jividen argues that Plaintiff has failed to allege a colorable claim against her. (Document No. 19 and Document No. 20, pp. 5 – 9.) Defendant Jividen states that "Plaintiff asserts no personal involvement in the lockdown on the part of Defendant Jividen," but merely alleges that Defendant Jividen "ignored" his grievances pertaining to the alleged lockdown. (Id.) Defendant Jividen contends that "Plaintiff does not have a cognizable constitutional claim against Defendant Jividen regarding her failure to respond to his grievances." (Id.) Defendant Jividen argues that "the alleged violations against Defendant Jividen that were advanced by Plaintiff were at best conclusory statements and are premised solely on her position as Commissioner of the West Virginia Division of Corrections and Rehabilitation rather than a personal participant in the lockdown – this premise does not support a constitutional violation." (Id.)

In Response, Plaintiff states that he sought "relief through the grievance procedure" and

13

"the final appeal" notified Defendant Jividen "of the wrongdoing and sought correction from her office." (Document No. 22.) Plaintiff alleges that "upon notification of the wrongdoing, the request for relief, Jividen became a direct party in the matter." (Id.) Plaintiff, therefore, concludes that "Defendant Jividen is directly liable according to the requirements laid out by law." (Id.)

In Reply, Defendant Jividen notes that Plaintiff's allegations do not support a finding that she failed to respond to "document widespread abuses." (Document No. 24, pp. 2 – 4.) Defendant Jividen explains that "at best, the alleged lock-down constituted a single or isolated incident." (Id.) Furthermore, Defendant Jividen states that "the amended complaint demonstrates that plaintiff's sole involvement with Defendant Jividen is through the grievance process – that is, when he appealed his grievance to Defendant Jividen's office." (Id.) Defendant Jividen argues that failure to respond to a grievance does not constitute a constitutional violation. (Id.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1936, 1948, 173 L.Ed.2d 868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a Bivens suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)); Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2018("the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability"). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on

14

those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). To establish liability under Section 1983 for a supervisory defendant, the plaintiff must establish the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Thus, a plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan, 737 F.2d at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding she either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of her subordinates. Id. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough. Rather, Section 1983 liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft, 556 U.S. at 676, 129 S.Ct. at 1949. Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendant Jividen argues that Plaintiff has failed to demonstrate specifically how she was personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendant Jividen violated his constitutional rights with respect to her failure to supervise employees or in responding to Plaintiff's appeal of his grievance. The dismissal of a

defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Besides responding to administrative remedies, the evidence of record does not indicate any personal involvement by Defendant Jividen. Further, Plaintiff's allegations do not support a finding that Defendant Jividen continually failed to act "in the face of documented widespread abuses." Besides Plaintiff's conclusory allegations, there is no indication that Defendant Jividen was personally involved in the denial of any constitutional right to Plaintiff, deliberately allowed Plaintiff's improper placement in "lockdown," or tacitly authorized staff's alleged misconduct. Accordingly, Plaintiff has improperly raised his claim against Defendant Jividen under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that Defendants' Motion to Dismiss (Document No. 19) should be granted as to Defendant Jividen.

### C.   Eighth Amendment:

As a general matter, punishments prohibited under the Eighth Amendment include those

that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271

17

(1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege [1] a serious or significant physical or emotional injury resulting from the challenged conditions or [2] demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979.

The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); also see Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration"). As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. In the instant case, Plaintiff contends that he was subjected to cruel and unusual conditions of his confinement when he was subjected to a temporary "lockdown." Taking Plaintiff's factual allegations as true, Plaintiff states that he was held in "lockdown" for approximately 38 days. (Document No. 18.) During this period, Plaintiff was denied open access to use the "TV, telephone, gym, outside recreation during daylight hours, use of dayroom, open use of showers, and social interaction." (Id.) Plaintiff acknowledges that he was released once a day, for approximately an hour, to shower and make one phone call. (Id.) Plaintiff contends that his placement in segregation or "lockdown" resulted in cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. (Document No. 18.) The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), cert. denied, Mickle v. Moore, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

19

[T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." Sweet v. South Carolina Dep't of Corrections], 529 F.2d at 861 (internal quotation marks omitted).

Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney , 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); see Sweet, 529 F.2d at 861-62. ***Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickland [v. Walters], 989 F.2d at 1381; see Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment by placing him in "lockdown" for approximately 38 days. (Document No. 18.) The undersigned notes that Plaintiff's confinement in segregation or "lockdown" was for a short, specific period of time. Although Plaintiff may have been inconvenienced in a number of ways as a result of his placement in "lockdown," his allegations do not present a claim of constitutional magnitude for which relief can be granted. To the extent Plaintiff relies upon Bishop v. McCoy, 174 W.Va. 99, 323 S.E.2d 140 (1984), the undersigned finds that such is non-binding authority upon this Court. Based on the foregoing, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (Document No. 19) be granted as to the above claim.

**D.** **Due Process Claim:**

In his Amended Complaint, Plaintiff alleges that Defendants violated his due process rights by holding him "lockdown" without a disciplinary charge or violation. (Document No. 18.) Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents

of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

Applying the principles set forth in Sandin, the undersigned finds that Plaintiff's placement on "lockdown" is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the length of his time on "lockdown," he does not complain that specific conditions of his confinement in "lockdown" were atypical and created a significant hardship as compared to ordinary prison life in mainline population. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement on "lockdown" were atypical or resulted in a significant hardship.[7] Administrative segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship.[8] See Beverati v. Smith, 120 F.3d 500, 502 (4th

---

[7] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

[8] In his Amended Complaint, Plaintiff complains he was subjected to lockdown from March 22, 2019 until April 29, 2019. Thus, Plaintiff's allegations reveal the lockdown was for limited period of time.

Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest). Thus, Plaintiff's claim of a liberty interest in remaining free from "lockdown" or in the fact of his confinement in "lockdown" is without merit. To the extent Plaintiff complains that Defendants misapplied their own polices, practices, and customs concerning administrative segregation or "lockdown," Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. See Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"); also see Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)("We need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty

interest"). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Document No. 19) be granted as to the above claim.

### E.    Equal Protection Claim:

Plaintiff alleges that Defendants discriminated against him because he was subjected to a "mass punishment" due to misconduct of only a few inmates within Section A8. (Document No. 18.) The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v.Wyche, 293 F.3d 726, 730-32 (4th Cir. 2002), citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); also see Fauconier, supra, 966 F.3d at 277(The inmate must first show that he was treated differently than other similarly situated inmates). "If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney, 293 F.3d at 730-32. "To account for the unique health and welfare concerns in the prison context," a court's review of an inmate's "challenge to a prison decision or policy is more demanding," as a court must "accord deference to the appropriate prison authorities." Fauconier, 966 F.3d at 277. In the prison context, disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interest." Veney, 293 F.3d at 732(quoting Shaw v. Murphy, 532 U.S. 223, 225, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)(alteration in original).

Plaintiff alleges that he and other inmates confined in Section A8 were treated differently than inmates confine in other sections. Plaintiff complains that due to the misconduct by a few inmates, all inmates confined in Section A8 were subjected to "mass punishment." Plaintiff states

that all uninvolved inmates were either subjected to "lockdown" or given the option of general population[9]. Taking Plaintiff's allegations as true, Plaintiff has failed to allege an Equal Protection violation. "[T]he class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." <u>Moss v. Clark</u>, 886 F.2d 686, 691 (4th Cir. 1989)(citation omitted)(alteration in original). Plaintiff acknowledges that he was treated the same as other uninvolved inmates in his Section. Plaintiff's complaint that he was treated differently than inmates confined in other Sections, does not establish that he was treated differently than similarly situated inmates. Again, Plaintiff acknowledges he was treated the same as other inmates within his Section. Furthermore, there is no allegation or indication that Plaintiff was treated differently for some discriminatory purpose. According, the undersigned finds that Plaintiff has failed to state a claim for denial of equal protection of the law.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

<u>**PROPOSAL AND RECOMMENDATION**</u>

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Remand Case to Circuit Court of Kanawha County (Document No. 8), **GRANT** Defendants' Motion to Dismiss Amended Complaint (Document No. 19), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene

---

[9] Plaintiff alleges that Section A8 was a general population section for inmates who had like charges or otherwise needed to be in protective custody but desired a general population section.

C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 16, 2020.



Omar J. Aboulhosn
United States Magistrate Judge